**DEX ORGANIZER COMPANY, LLC,**

     **Plaintiff,**

**v.**                                      **Case No.:** _____

**DAVID DUDLEY,**

     **Defendant.**

## VERIFIED COMPLAINT FOR
## INJUNCTIVE RELIEF AND DAMAGES

**COMES NOW**, Plaintiff, DEX Organizer Company, LLC ("DEX" or "Plaintiff"), by and through undersigned counsel, and submits the following Verified Complaint for Breach of Contract, Injunctive Relief, and Damages against Defendant David Dudley ("Defendant"), stating as follows:

## I.
## INTRODUCTION

1. Despite Defendant's explicit contractual commitments not to make derogatory or injurious statements regarding DEX or its products, Defendant has made numerous public statements on social media platforms and major industry broadcast outlets that are harmful to DEX's products and business interests in breach of the Confidentiality, Nondisclosure, and Non-Disparagement Agreement (the "Agreement") entered into by DEX and Defendant on January 11, 2026.[1] DEX brings this action to enforce the provisions of the Agreement, obtain injunctive relief

---

[1] Pursuant to Rule 8(a) of the Federal Rules of Civil Procedure, the Agreement is not attached hereto as an exhibit but is in the possession of both DEX and Defendant. A copy of the Agreement will be produced for the Court upon request.

requiring Defendant to immediately cease all harmful conduct and remove all injurious content from public platforms, and to recover damages caused by Defendant's breach.

## II.
## PARTIES, JURISDICTION, AND VENUE

2.      DEX is a Tennessee limited liability company with its principal office at 1070 Miller Road, Signal Mountain, Tennessee 37377.  DEX's members are citizens of the State of Tennessee and the Federal Republic of Germany.  DEX manufactures and sells the "DEX Organizer," a fishing rod storage system designed for professional and recreational anglers.

3.      Defendant is an adult resident of Virgina and resides at 553 Lake Court Avenue, Lynchburg, Virginia 24502.  Defendant is a professional bass angler who competes in bass tournaments.

4.      This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship among the parties and the amount in controversy exceeds $75,000.

5.      This Court has personal jurisdiction over Defendant pursuant to Tenn. Code Ann. § 20-2-214.  Defendant established minimum contacts with Tennessee by purposefully availing himself of the forum through deliberately contracting with a Tennessee company, performing obligations directed at Tennessee, including use of DEX's boat and bass fishing activities in the state, maintaining an ongoing business relationship with a Tennessee entity, and directing social media content to Tennessee consumers, all of which gave him fair warning that his activities could subject him to jurisdiction in the State of Tennessee.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial

2

district.  Alternatively, venue is proper under 28 U.S.C. § 1391(b)(1) because DEX maintains its principal office in this judicial district and is therefore subject to personal jurisdiction here.

**III.**
**FACTUAL BACKGROUND**

### A.     The Agreement

7.     On January 11, 2026, DEX and Defendant entered into the Agreement to confirm Defendant's ongoing obligations of confidentiality and nondisclosure with respect to certain non-public information relating to DEX's business, products, customers, operations, plans, strategies, and related matters to which Defendant had access and knowledge, and to protect DEX from reputational harm and the misuse of such information.

8.     Section 1.3 of the Agreement provides:

'Disparage' / 'Disparagement' means any statement, communication, implication, gesture, post, comment, message, review, or other conduct (public or private, direct or indirect) that could reasonably be expected to harm the reputation, goodwill, or business interests of [DEX] or any of its owners, employees, customers, products, brands, or services, including statements that accuse or imply dishonesty, nonpayment, bad faith, unethical behavior, unsafe products, incompetence, or wrongdoing, whether or not phrased as opinion, insinuation, 'just asking questions,' or 'I heard.'

9.     Consistent with that definition, under Section 3.1, Defendant agreed that he would not "Disparage [sic] [DEX] or any of its [] owners, employees, agents, customers, products, brands, or services, [] include[ing] (without limitation) statements made in person, by phone, in text, email, direct message, social media posts/comments, podcasts, interview, public appearances, tournaments, sponsor gatherings, or to other anglers, brands, media outlets, or industry contacts."

10.     Section 3.2 extended this prohibition further, with Defendant agreeing not to "(a) encourage, solicit, coordinate, or induce others to Disparage [sic] [DEX]; (b) 'like,' repost, share, retweet, quote-tweet, amplify, or otherwise promote Disparaging [sic] content created by others;

3

or (c) communicate Disparaging [sic] information through 'leaks,' anonymous accounts, third parties, or 'off the record' channels."

11.     Section 3.3 imposed an affirmative obligation on Defendant to "promptly remove or cause removal of any content that violates [] Section 3 and issue a clarifying or corrective statement" upon written request by DEX.

12.     In recognition of the harm that violations of these provisions would cause, Defendant "acknowledge[d] that any breach or threatened breach of this Agreement (including confidentiality, nondisclosure, and non-disparagement) would cause [DEX] real and substantial damages, including harm to goodwill and reputation, loss of business opportunities, and other damages that may be difficult to quantify."

13.     Accordingly, Defendant agreed that "[DEX] shall be entitled to immediate injunctive relief, specific performance, and other equitable remedies (without the requirement of posting a bond to the extent permitted by law) in addition to any other rights and remedies available at law or equity."

14.     Defendant further agreed "that the Boat Hull may be demanded at any time by [DEX].  Upon demand, [Defendant] shall (a) deliver the Boat Hull to the location designated by [DEX] or (b) make the Boat Hull immediately available for pick-up at a time and place designated by [DEX].  [Defendant] shall not delay, obstruct, condition, or refuse return for any reason, including any alleged dispute, claim, or demand."

15.     Finally, Section 8.3 provides that, "[i]n any action to enforce this Agreement, the prevailing Party shall be entitled to recover its reasonable attorneys' fees and costs."

**B.     *Defendant's Public Statements Concerning DEX and Its Products***

4

16. On or about April 30, 2026, Defendant made public, denigrating statements about the DEX Organizer during a video segment of the MLFNOW! Livestream, published on the Major League Fishing website.

17. The following is a transcription of the statements made by Defendant on the MLFNOW! Livestream and published on the Major League Fishing website:

DEX Organizer here. This is made so you can step on it, but you better be an athletic person. I can tell you that if you're not an athletic person, you could, you know, it's pretty dangerous. You could break your ankle, fall in, say if the water is cold. Like this is a, this is a spinning rod, but it's made to step on. But the guides, you got to be careful if you're stepping on it because the guides come up and you can crush your guides. But man, you know, it, it organizes your rod somewhat. But I can tell you right now, you better be an athletic person. I'm just letting you know the danger of it because you can twist your ankle, you can fall overboard or whatever on this thing, but either way, that was a dumb two minute penalty, wasn't it?In May 2026, Defendant posted a video on his public Facebook and Instagram profiles containing statements regarding DEX and its products.

18. In May 2026, Defendant posted a video on his public Facebook and Instagram profiles containing further negatively charged statements regarding DEX and its products.

19. The following is a transcription of the video posted by Defendant to Facebook and Instagram while displaying a DEX Organizer:

Alright guys want to talk a little bit about again boat safety and protection of rods. So if you whatever style boat you have just you don't ever want to step on your rods, right? We know what's going to happen when you break them. So we know today is a spinning rod world. For example, whatever system you're using now this is a DEX Organizer. You got that the guides go down below. Like for instance this is DEX Organizer. So very clearly you're gonna, you know you could, you could break your, your guides, break your rods. Just be careful. And another safety is just always you know, you don't ever want to step on something and twist your ankle or kick something and go in. Just be mind conscious, you know, don't step on your rods. Like you know it'd be. If you stepped on this it'd be very, it would be very high chance that you're going to crack you rods and again maybe twist your ankle or something if you're not careful. So just be careful in boats guys.

20. Upon information and belief, Defendant has established one or more anonymous or pseudonymous accounts on the social media platforms Instagram and Facebook for the express purpose of disseminating additional negative and injurious content concerning the DEX Organizer.

21. Prior to these public statements, Defendant had posted content on his social media platforms that was favorable to the DEX Organizer and that generated positive consumer engagement and commentary.

22. Beginning in April 2026, public commentary reflected a market shift in consumer sentiment toward the DEX Organizer, directly corresponding with Defendant's public statements denigrating the DEX Organizer.

23. Defendant's statements were disseminated on prominent public platforms accessible to consumers, retailers, and industry professionals throughout the United States in the same market which DEX sells and promotes its products.

24. On May 7, 2026, Defendant sent a text message to Shawn Campbell, a corporate representative of DEX, threatening: "I got at least 15 recorded ready to go with dex all n videos. If im not mistaken you promised me a hull. Is that still a promise? Its a yes or no not complicated."

25. DEX's representative responded and explained that no hull had been promised, that Defendant was offered a partnership opportunity rather than a professional fishing contract, and that the arrangement ended because Defendant was unable to contribute financially.

26. In response, Defendant conditioned his willingness to cease and refrain from publishing further negative content about DEX and its products on DEX's transfer of a boat to him.

**C.** **DEX's Pre-Suit Demand and Defendant's Response**

6

27. On May 8, 2026, DEX, by and through undersigned counsel, sent Defendant a written cease-and-desist letter, identifying his public statements about the DEX Organizer on Facebook, Instagram, and the MLFNOW! Livestream as material breaches of the Agreement.

28. The letter demanded that Defendant (a) cease making disparaging statements, (b) remove the offending content in compliance with Section 3.3 of the Agreement, and (c) confirm compliance by 5:00 p.m. CST on May 11, 2026. A true and correct copy of the May 8, 2026 correspondence is attached hereto as Exhibit A and incorporated herein by reference.

29. Through the May 8, 2026 correspondence, DEX expressly placed Defendant on notice of his breach, his obligations under the Agreement, and the substantial damages that his conduct would cause DEX and demanded return . *See* Exhibit A.

30. On May 11, 2026, at 3:56 p.m. Central Time, Defendant emailed DEX's counsel in response to the May 8, 2026 letter. A true and correct copy of Defendant's May 11, 2026 email is attached hereto as Exhibit B and incorporated herein by reference.

31. In his email, Defendant denied that his statements were disparaging, claimed that the Agreement is no longer valid or enforceable, and erroneously asserted that his contractual obligations expired on January 11, 2026.

32. To date, Defendant's content remains publicly accessible.

33. Defendant's continued failure to remove the harmful content and cease his injurious conduct constitute ongoing breaches of the Agreement to which Defendant has had ample notice and opportunity to cure.

34. Defendant's statements, made on prominent social media platforms and a major industry broadcast, have caused and continue to cause irreparable harm to DEX's goodwill, reputation, and business interests.

7

35. Defendant is a well-known professional bass fisherman whose opinions carry significant weight with consumers and industry participants in the market to which DEX sells its products.

36. Under Section 8.1 of the Agreement, Defendant expressly agreed and acknowledged that breaches of this nature cause real and substantial damages to DEX, including harm to goodwill and reputation, loss of business opportunities, and other damages that may be difficult to quantify.

**IV.**
**CAUSES OF ACTION**

**COUNT I**
**BREACH OF CONTRACT**

37. DEX realleges and incorporates by reference all preceding allegations as if fully set forth herein.

38. The Agreement constitutes a valid, binding, and enforceable contract between DEX and Defendant.

39. DEX has fully performed all its obligations under the Agreement.

40. Defendant has materially breached the Agreement by, *inter alia*, (a) making public statements on social media platforms and major industry broadcasts that are harmful and injurious to DEX's reputation, goodwill, and business interests in violation of Section 3.1 of the Agreement; (b) failing and refusing to remove such content upon written demand by DEX in violation of Section 3.3 of the Agreement; (c) encouraging, soliciting, or inducing others to make similarly harmful statements, and establishing anonymous or pseudonymous accounts for the purpose of disseminating additional injurious content, in violation of Section 3.2 of the Agreement; and (d)

8

threatening to publish additional harmful content unless DEX provided him with a boat, constituting further evidence of willful and deliberate breach.

41. Defendant knew his harmful and injurious statements would reach a substantial audience, including over half a million of Defendant's followers and all viewers of the MLFNOW! Livestream, a major industry platform.

42. As a direct and proximate result of Defendant's breaches, DEX has suffered and continues to suffer substantial damages, including but not limited to harm to its goodwill and reputation, loss of business opportunities, lost sales and revenue, and other economic harm.

43. DEX is entitled to recover damages for, *inter alia*, harm to goodwill and reputation, loss of business opportunities, decrease in product visibility, attorneys' fees and costs pursuant to Section 8.3 of the Agreement, return of DEX's boat hull currently in Defendant's possession, and other damages in an amount to be proven at trial.

**COUNT II:**
**PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF**

44. DEX realleges and incorporates by reference all preceding allegations as if fully set forth herein.

45. DEX is likely to succeed on the merits because Defendant's public statements fall squarely within the conduct prohibited by Sections 3.1 and 3.2 of the Agreement, and Defendant has refused to comply with his remedial obligations under Section 3.3 despite DEX's written demand.

46. DEX has suffered and will continue to suffer irreparable harm absent injunctive relief.

47. Defendant's statements have been made on prominent public platforms accessible to consumers, retailers, and industry professionals throughout the United States, and the resulting

9

harm to DEX's goodwill, reputation, and customer relationships cannot be adequately compensated by monetary damages alone.

48. The balance of equities tips in DEX's favor. Defendant voluntarily assumed the obligations set forth in the Agreement, and requiring him to comply with those obligations imposes no undue burden. By contrast, permitting Defendant to continue his harmful conduct will cause DEX ongoing and compounding injury.

49. The public interest favors enforcement of valid contractual obligations and the protection of businesses from willful and deliberate interference with their commercial relationships and reputation.

50. Pursuant to Section 8.1 of the Agreement, Defendant expressly acknowledged that breaches of this nature would cause real and substantial damages and agreed that DEX would be entitled to immediate injunctive relief, specific performance, and other equitable remedies without the requirement of posting a bond to the extent permitted by law.

51. DEX respectfully requests that this Court enter a preliminary injunction, and thereafter a permanent injunction, requiring Defendant to: (a) immediately cease and desist from making any further public or private statements that are harmful or injurious to DEX, its owners, employees, customers, products, brands, or services; (b) immediately remove or cause the removal of all such content from all public platforms, including but not limited to Facebook, Instagram, and any anonymous or pseudonymous accounts; (c) immediately return to DEX any and all property, including without limitation the boat hull currently in Defendant's possession; and (d) comply with all obligations under the Agreement.

10

## COUNT III
## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

52.     DEX realleges and incorporates by reference all preceding allegations as if fully set forth herein.

53.     DEX has established and maintains ongoing business relationships with consumers, retailers, distributors, sponsors, and industry professionals who purchase, promote, and sell the DEX Organizer.

54.     Defendant had knowledge of DEX's business relationships because Defendant is a professional bass fisherman who had a direct relationship with DEX, used DEX's products in a professional capacity, knew of DEX's customer base, and understood that his public statements would reach thousands of consumers within DEX's direct market.

55.     Defendant intentionally and improperly interfered with DEX's existing and prospective business relationships by knowingly making injurious public statements regarding the safety and quality of the DEX Organizer with the retaliatory purpose to harm DEX's business relationships, deter customers from purchasing DEX products, and coerce DEX into transferring title to a boat.

56.     Defendant's conduct was motivated by personal financial gain rather than any legitimate concern for public safety.

57.     As a direct and proximate result of Defendant's tortious interference, DEX has suffered and continues to suffer substantial damages, including but not limited to loss of existing and prospective customers, diminished consumer confidence in the DEX Organizer, lost sales and revenue, and harm to DEX's goodwill and business reputation.

58.     DEX is entitled to recover damages for, *inter alia*, harm to goodwill and reputation, loss of business opportunities, decrease in product visibility, attorneys' fees and costs pursuant to

11

Section 8.3 of the Agreement, return of DEX's boat hull currently in Defendant's possession, and other damages in an amount to be proven at trial.

**COUNT IV**
**DAMAGES**

59.     DEX realleges and incorporates by reference all preceding allegations as if fully set forth herein.

60.     As a direct and proximate result of Defendant's wrongful conduct as alleged herein, DEX has suffered and continues to suffer damages in an amount to be proven at trial, including but not limited to:

   i.     Harm to goodwill and reputation among consumers, retailers, and professional anglers, industry participants, loss of consumer confidence in the safety and quality of DEX products, and declining business relationships;

   ii.     Loss of business opportunities, including loss of current and prospective customers;

   iii.     Diminished value of DEX's brand and product lines, including diminished value of the intellectual property rights associated therewith, specifically including U.S. Patent No. 11,898,825; and

   iv.     Loss of the benefit of Defendant's formerly positive endorsement of DEX's products, which generated positive consumer engagement and demonstrated the commercial value of Defendant's association with DEX's brands prior to his retaliatory disparagement campaign; and

   v.     Other consequential damages from Defendant's breaches, including damages to DEX's competitive position in the professional bass fishing market.

61.     The full extent of DEX's damages will be established at trial.

12

62.     DEX is entitled to recover all actual and consequential damages proximately caused by Defendant's breaches of the Agreement.

63.     DEX is further entitled to recover its reasonable attorneys' fees and costs incurred in this action under Section 8.3 of the Agreement.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff DEX Organizer Company, LLC respectfully prays:

1.     That service of process be issued to Defendant, requiring him to appear and answer this Complaint within the time prescribed by the Federal Rules of Civil Procedure;

2.     That this court issue a preliminary injunction requiring Defendant to (a) immediately cease and desist from making any further public or private statements that are harmful or injurious to DEX, its owners, employees, customers, products, brands, or services; (b) immediately remove or cause the removal of all such content from all public platforms, including but not limited to Facebook, Instagram, and any anonymous or pseudonymous accounts; and (c) comply with all obligations under the Agreement;

3.     That this Court, upon final adjudication, issue a permanent injunction requiring Defendant to (a) immediately cease and desist from making any further public or private statements that are harmful or injurious to DEX, its owners, employees, customers, products, brands, or services; (b) immediately remove or cause the removal of all such content from all public platforms, including but not limited to Facebook, Instagram, and any anonymous or pseudonymous accounts; and (c) comply with all obligations under the Agreement;

4.     That this Court award DEX compensatory damages in an amount to be determined at trial for all actual damages caused by Defendant's breaches of the Agreement and his tortious conduct;

5.    That this Court award DEX consequential damages in an amount to be determined at trial, including but not limited to harm to goodwill and reputation, loss of business opportunities, and diminished brand value;

6.    That this Court order Defendant to immediately return to DEX any and all property belonging to DEX, including without limitation the boat hull currently in Defendant's possession, in accordance with Section 5 of the Agreement, and award DEX specific performance of Defendant's obligations thereunder;

7.    That this Court award DEX its reasonable attorneys' fees and costs incurred in this action pursuant to Section 8.1 of the Agreement;

8.    That this Court award DEX pre-judgment and post-judgment interest at the highest rate permitted by law; and

9.    That this Court grant DEX such other and further relief as it deems just and equitable.

Respectfully submitted,

**EVANS PETREE PC**

*/s/ Brian L. Yoakum*
Brian L. Yoakum   (TN Bar No.24811)
1715 Aaron Brenner Drive, Suite 800
Memphis, Tennessee 38120
(901) 525-6781
byoakum@evanspetree.com
*Attorney for Plaintiff DEX Organizer Company, LLC*

14

**<u>VERIFICATION</u>**

**STATE OF TENNESSEE**
**COUNTY OF HAMILTON**

I, SHAWN CAMPBELL, Chief Financial Officer of Plaintiff DEX Organizer Company, LLC, hereby state under penalty of perjury that I have read the foregoing Verified Complaint, that the factual allegations set forth therein are true and correct to the best of my knowledge, information, and belief, that the Exhibits attached hereto are true and correct copies of the documents they purport to be, and that this Verified Complaint is filed in good faith and not for any improper purpose.

**DEX ORGANIZER COMPANY, LLC**, *a Tennessee limited liability company*

By: _____

Its: _____

Date: _____

Subscribed and sworn to before me this _____ day of May 2026.

_____
Notary Public

My Commission Expires:

15

## VERIFICATION

**STATE OF TENNESSEE**
**COUNTY OF HAMILTON**

I, SHAWN CAMPBELL, Chief Financial Officer of Plaintiff DEX Organizer Company, LLC, hereby state under penalty of perjury that I have read the foregoing Verified Complaint, that the factual allegations set forth therein are true and correct to the best of my knowledge, information, and belief, that the Exhibits attached hereto are true and correct copies of the documents they purport to be, and that this Verified Complaint is filed in good faith and not for any improper purpose.

DEX ORGANIZER COMPANY, LLC, a
*Tennessee limited liability company*

By: _____

Its: *Managing Member*

Date: *May 26, 2026*

Subscribed and sworn to before me this 26TH day of May 2026.

Notary Public _____

My Commission Expires: 11-5-2029

*[Notary Seal: DAVID A SIMPSON, STATE OF TENNESSEE, NOTARY PUBLIC, HAMILTON COUNTY]*